UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRAWICK CONTRACTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 00-BU-1661-S |
| | ) | |
| ENVIRONMEDIATION SERVICES, L.L.C.; UNITED CAPITAL INSURANCE COMPANY, | ) | |
| | ) | **ENTERED** |
| | ) | |
| Defendants. | ) | MAY 17 2001 |

## Memorandum Opinion

Now before the Court in the above-styled action are cross-motions for partial summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Trawick Contractors, Inc. ("Trawick") and Defendants Enviromediation Services, L.L.C. ("Enviromediation") and United Capital Insurance Company[1] ("UCIC") (hereinafter collectively "Defendants"). In its motion filed March 23, 2001, Trawick

---

[1]It would appear from bonding documents in the record that this Defendant spells its name "United Capitol Insurance Company," with an "o" in "Capitol." See Plaintiff's Ex. 6 in support of its motion for summary judgment. Nonetheless, the pleadings, motions, and briefs in this action have consistently referred to this party as "United Capital," with an "a."

claims that it is entitled to judgment on its claim alleging that UCIC is liable for bad faith failure to pay on a performance bond. (Doc. 23). In Defendants' cross-motion filed the same day, UCIC contends that summary judgment is warranted in its favor on such bad faith claim, while both UCIC and Enviromediation assert that they are entitled to summary judgment on fraud claims Trawick advances against each of them. (Doc. 21). The parties have filed evidence and briefs in support of their respective positions on the cross-motions, which are now ripe for decision. Based upon a careful review of the record and the arguments of counsel, the Court concludes that Trawick's motion for partial summary judgment is due to be DENIED while Defendants' cross-motion for partial summary judgment is due to be GRANTED IN PART, as to Trawick's fraud claims, and DENIED IN PART, as to Trawick's bad faith claim.

## I. BACKGROUND

Plaintiff Trawick is an Alabama corporation with its principal place of business in Alabama. It was the general contractor on a construction project as the "Whole Neighborhood Revitalization" at Fort Benning, Georgia (the "Project"). Trawick accepted a bid of $636,000 from Asbestos Free, Inc. ("Asbestos Free") for a subcontract on the Project for the removal of asbestos and lead-based paint from residential units. In about October 1998, after conducting preliminary tests to determine what procedures should be used to remove the asbestos and lead paint, Asbestos Free determined that the abatement would be more expensive than originally contemplated by its bid. In early November 1998, Asbestos Free asked for additional compensation, and Trawick agreed to raise the contract price to $811,000. At the end of November 1998, Trawick advised the Army Corps of

Engineers that Trawick's contract price might have to be increased by $1,636,800.00, in large part because of additional work that would have to be performed by the asbestos and lead paint removal subcontractor.

Asbestos Free then subcontracted much of its abatement responsibilities to Defendant Enviromediation, a Georgia limited liability company with its principal place of business in Columbus, Georgia. Under this subcontract, Enviromediation received about $600,000 to furnish the labor and materials and actually perform the abatement work. Asbestos Free retained the duty to manage the site, prepare paperwork and schedules, dispose of material, and act as a general contractor to Enviromediation.

Subsequently, Trawick had concerns about Asbestos Free's ability to perform its work on the Project, allegedly based upon rumors that Asbestos Free was planning on filing for bankruptcy and was about to lose certain key employees. An Asbestos Free representative approached Enviromediation's president, Jack Jones, and inquired about whether Enviromediation would be interested in buying out Asbestos Free's contract with Trawick. Enviromediation agreed, and on January 13, 1999, it purchased Asbestos Free's contract with Trawick for $40,000.

Consenting to Enviromediation's assumption of the Asbestos Free contract, Trawick entered into a subcontract with Enviromediation on January 15, 1999, pursuant to which the latter was to be responsible for all the lead-based paint and asbestos removal duties on the Project. Trawick, however, considered Enviromediation to have had problems meeting its work requirements "from the very beginning," according to a May 3, 1999 letter sent by Trawick to Enviromediation. Further, by April 1, 1999, Trawick's manager on the Project, Jeff

Thomas, wrote a letter to Jones at Enviromediation indicating they were "desperately behind schedule" and that Trawick needed Enviromediation to commit more manpower to the job.  The letter of May 3rd details various problems Trawick perceived with Enviromediation's performance, including, among other things, the latter's alleged (1) failure to provide submittals on the Project in a timely manner; (2) working at a pace that suggested it would take many times longer to complete its abatement work than it had represented; and (3) unsuccessful efforts at "vat stripping."

In addition to these types of problems, Trawick also began to have concerns about Enviromediation's financial capabilities.  In order to allow Enviromediation to attempt to continue working on the Project, Trawick allowed Enviromediation to make draws for $80,000, contrary to the provisions of their contract, on the amount due under the contract "before the work was completed and accepted by the Owner."  In response to a request for another draw, Trawick loaned Enviromediation $50,000 on April 19, 1999 to meet payroll obligations. Enviromediation was due to repay the loan by June 3, 1999, according to the terms of a promissory note.

Under its January 15, 1999 subcontract with Trawick, Enviromediation was required to furnish "an adequate performance bond and a separate payment bond in form and amount and with surety acceptable to [Trawick]."  However, Enviromediation did not immediately obtain the required bonds, allegedly because it was in the middle of switching bonding companies. Ultimately, Enviromediation obtained both a payment bond and a performance bond in favor of Trawick on April 1, 1999, from Defendant UCIC, a Georgia corporation with its principal

place of business in Atlanta. Enviromediation provided these bonds to Trawick on April 5, 1999, which was the first time Trawick learned that UCIC would be the surety. After briefly checking to see that UCIC was a reputable company, Trawick approved the bonds.

While UCIC was considering whether to issue the subject bonds, it never directly communicated with either Enviromediation or Trawick. UCIC dealt with Enviromediation through a sales agent in Florida. At the agent's request, Enviromediation provided information about its finances and history, along with copies of its contracts in connection with the Project. No one from UCIC ever contacted Trawick during the former's underwriting of the subject performance and payment bonds.

On May 11, 1999, Trawick declared Enviromediation in default for abandoning its work on the project. Around this same time, Enviromediation discovered that some of its employees had engaged in fraud on an unrelated job in Birmingham, Alabama. This alleged fraud cost Enviromediation about $500,000 in April or May 1999, severely impacting its ability to purchase lead-based paint removal chemicals and to meet its payroll. After Enviromediation's failed to meet its payroll, its laborer employees stopped coming to the Project job site.

On May 19, 1999, Trawick made a claim under the performance bond for UCIC to complete Enviromediation's work on the Project. On June 2, 1999, this claim was forwarded to Frontier Insurance Company ("Frontier"), which had since acquired UCIC and become responsible for processing claims on its bonds. After receiving Trawick's claim on the performance bond, Frontier allegedly decided to pay numerous claims on the payment bond. It also solicited bids for other

contractors to complete Enviromediation's work on the project, with the lowest bid coming in at $1,388,000.

Ultimately, however, in a letter dated August 4, 1999, Frontier advised Trawick that it was denying its claim on the UCIC performance bond. Frontier stated, through Bruce L. Maas, its senior counsel, that after reviewing Trawick's claim, Frontier was not going to pay because it believed that Trawick knew that it was entering into a contract with a "troubled, underfinanced contractor" when it entered into its direct subcontract with Enviromediation on January 15, 1999. Frontier explained more particularly that it found that Trawick knew that Enviromediation had several performance problems on the Project even when it was a sub-subcontractor to Asbestos Free and that despite its knowledge of Enviromediation's questionable ability to complete the work, Trawick entered into a direct subcontract with Enviromediation for a contract price that was less than half the price of the next lowest bid on the asbestos and lead-based paint removal part of the Project. Further, Frontier stated that although Trawick knew that Enviromediation had continued to experience performance problems, Trawick failed to advise Frontier about the situation, which materially increased Frontier's risk in bonding the project. Frontier told Trawick that under such circumstances it considered the bond to be voidable.

On May 5, 2000, Trawick filed suit against Enviromediation and UCIC in the Circuit Court of Jefferson County, Alabama. In Count I, Trawick claims that Enviromediation is liable for breaching its obligations under the January 15, 1999 subcontract. In Count II, Trawick alleges that UCIC is also liable for breach of contract, based upon its failure to pay Trawick pursuant to the terms of the

performance bond after Enviromediation defaulted. In Count III, Trawick claims that UCIC is additionally liable for bad faith failure to pay on the performance bond. Trawick seeks a judgment awarding $2,000,000, plus interest and costs, on this claim. In Counts IV through VI, Trawick asserts that Enviromediation is liable for fraud based upon negligent, reckless, or intentional misrepresentations that it would complete the work under the terms of the subcontract and that, should it fail to do so, the bonding company with whom it contracted, UCIC, would pay on the performance bond. Trawick claims that it relied to its detriment upon such representations by entering into the subcontract with Enviromediation. In Counts VII through IX, Trawick advances fraud claims against UCIC. In connection with these counts, Trawick alleges that UCIC negligently, recklessly, or intentionally misrepresented that it would pay Trawick on the performance bond should Enviromediation default, and that Trawick detrimentally relied upon such misrepresentation by entering into the subcontract with Enviromediation. Trawick seeks $2,000,000 each from Enviromediation and UCIC on the intentional fraud claims leveled against them.

Defendants removed the case to this Court on June 16, 2000, based upon this Court's diversity jurisdiction. See 28 U.S.C. § 1332. The parties have now filed cross-motions for partial summary judgment. Trawick and UCIC each claim that they are entitled to summary judgment on Trawick's bad faith claim, while both Defendants urge that summary judgment is due on all of Trawick's fraud claims.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists

and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact.  Celotex, at 323.  See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994).  In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor.  Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).  "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299).

## III.  CONTENTIONS & ANALYSIS

### A. The Bad Faith Claim

Both Trawick and UCIC have moved for summary judgment on Trawick's

claim that UCIC acted in bad faith when it refused to pay on the performance bond. The Court has considered the evidence and the arguments of the parties and the Court concludes that there is a genuine issue of material fact and that neither party is entitled to judgment as a matter of law on this claim. Accordingly, Trawick and UCIC's cross-motions for summary judgment are each due to be denied insofar as they pertain to Trawick's claim of bad faith.

### B. The Fraud Claims

Defendants also argue that all of Trawick's fraud claims are due to be dismissed. However, there seem to be two initial disagreements among the parties on these claims as well. First, they do not appear to agree whether these claims are governed by the law of Alabama or Georgia. In their motion for summary judgment, Defendants assume that Alabama law applies to these claims. Rather than expressly contesting the point, Trawick responds by engaging in a discussion of the viability of its fraud claims under both Alabama law and Georgia law, at least implying that the latter may be applicable. Second, the parties dispute whether the allegedly false representations underlying Trawick's fraud claims relate to existing facts or future events. Defendants argue that all of these claims sound in promissory fraud, based upon alleged misrepresentations regarding future performance under contracts. Trawick, on the other hand, maintains that it is alleging claims of simple fraud, based upon misrepresentations of present fact. The practical significance of this disagreement is that, under either Alabama and Georgia state law, it is substantially more difficult to prove a claim of promissory fraud, than it is to prove a claim of fraud based upon a misrepresentation of existing fact. The Court concludes that regardless of whether Alabama or Georgia law applies to

Trawick's fraud claims, they all sound in promissory fraud and are due to be dismissed on summary judgment.

Alabama and Geogia law each recognize essentially the same distinction between ordinary fraud claims alleging detrimental reliance upon a misrepresentation of an existing, material fact and those alleging such reliance upon a misrepresentation amounting to a statement or promise regarding future events that is ultimately unfulfilled. In Alabama, it is well established that " ' "[t]he only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform . . . some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action . . . were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive." ' " Centon Electronics, Inc. v. Bonar, 614 So.2d 999, 1003 (Ala.1993), quoting Hearing Systems, Inc. v. Chandler, 512 So.2d 84, 87 (Ala.1987), quoting, in turn, Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519 (Ala.1983). Georgia observes the similar rule that a fraud claim is not actionable where it is based on allegations of detrimental reliance upon statements or promises as to future events, unless it is shown that the promise as to future events was made with a present intent not to perform or where the party making the statement knew that the future event will not take place. See Higginbottom v. Thiele Kaolin Co., 251 Ga., 148, 152 , 304 S.E.2d 365, 368 (1983); Kirkland v. Pioneer Machinery, Inc., 243 Ga. App. 694, 695, 534 S.E.2d 435, 436 (2000). Further, both jurisdictions recognize that the failure to perform a promised act, standing alone, is insufficient to prove the requisite intent to deceive described above; otherwise every breach of contract would be tantamount to fraud. See, e.g., Pegram v. Hebding, 667 So. 2d 696, 703

(Ala. 1995); Hamilton v. Advance Leasing etc., 208 Ga. App. 848, 850, 432 S.E.2d 559 (1993).

Despite Trawick's confused protestations to the contrary, it is obvious that all of its allegations of fraud and misrepresentation encompassed within the complaint sound in promissory fraud. Trawick alleges in Counts IV through VI that it relied to its detriment by entering into the subcontract with Enviromediation based upon Enviromediation's representations that it "would complete the work pursuant to the terms" of that contract and that should Enviromediation fail to do so, the bonding company with whom Enviromediation had contracted "would pay to Trawick as the obligee under the bonding agreement, the amount necessary to complete the agree-upon (sic) work or the amount of the bond, whichever was less." Complaint at ¶ 29 (emphasis added). It can hardly be argued that such do not amount to claims that Trawick was induced to enter into the subcontract by promises and/or statements made by Enviromediation regarding events yet to occur, i.e., Enviromediation's subsequent performance under the contract and its surety's payment on the bond. Likewise, Trawick's fraud claims against UCIC are premised upon allegations that Trawick entered into the subcontract with Enviromediation based upon UCIC's representation in the bond document that it would pay should Enviromediation default. See Complaint at ¶¶ 40-43. Such claims are plainly promissory in nature, as they depend upon whether UCIC pays on the bond, should a default occur.

Turning to the merits, the Court first concludes that summary judgment is warranted on all of Trawick's fraud claims against Enviromediation  Trawick correctly notes that it can prevail on a promissory fraud claim based upon

circumstantial evidence suggesting the requisite present intent not to perform.  See
Ex parte Grand Manor, Inc., 778 So. 2d 173, 183 (Ala. 2000); Marshall v. W.E.
Marshall Co., 189 Ga. App. 510, 513, 376 S.E.2d 393, 397 (1988).  However,
Trawick has pointed to no evidence, circumstantial or otherwise, reasonably
indicating that Enviromediation representatives actually had an intent that
Enviromediation would not perform its obligations under the subcontract when
that agreement was formed on January 15, 1999.  While Enviromediation
subsequently may have had difficulties meeting all of its contract responsibilities
and eventually defaulted, such is not sufficient to prove fraudulent intent.  This is
especially so given the undisputed fact that Enviromediation actually performed
asbestos and lead paint abatement work on the Project for almost four months
before ultimately defaulting, after experiencing financial and other problems on
another job.  Trawick also claims in its complaint that Enviromediation engaged
in fraud by representing that the bonding company with whom it contracted,
UCIC, would pay on a performance bond should Enviromediation default.  The
evidence shows, however, that Enviromediation obligated itself merely to secure
a performance bond acceptable to Trawick.  Enviromediation did, in fact, do that.
But even if it is assumed that Enviromediation made a promise to Trawick that a
surety would pay upon a default, there is absolutely nothing in the record
indicating that Enviromediation representatives knew or believed upon entering the
subcontract that the surety, which Trawick later approved, would not pay.  Because
Trawick's fraud claims against Enviromediation amount to breach of contract
allegations without proof of an intent to deceive, they are due to be dismissed.

      Such is also the fate of Trawick's fraud claims against UCIC.  In its

complaint, Trawick alleges that the representation underlying these fraud claims is that UCIC indicated in bond documents that it would pay pursuant to the terms of said bond should Enviromediation default on its obligations under the subcontract with Trawick. But aside from the fact that UCIC did not pay, Trawick has offered no evidence tending to support an inference that United Capital actually intended not to pay upon default when it issued the performance bond in Trawick's favor. In connection with this issue, Trawick offers that UCIC failed to perform a proper investigation of Enviromediation's performance under the subcontract before issuing the bond. Plaintiff's Opposition at 23. Assuming this is true, it might suggest that UCIC took inadequate precautionary measures to protect its own interests, but the Court fails to see how such implies that UCIC issued the bond with a present intention not to pay should Enviromediation default.

Further, there is an even more fundamental problem with these fraud claims against UCIC. It is elementary that regardless of whether a fraud claim is brought under Alabama law or Georgia law, and regardless of whether it is based upon a false representation regarding existing facts or future events, a plaintiff must show that it was induced to take some action or not to take some action in reliance upon the representation. See, e.g., Howard v. Wolff Broadcasting Corp., 611 So. 2d 307, 311 (Ala. 1992) (listing elements of fraud and promissory fraud); Seligman v. Savannah Wholesale Co., Inc., 185 Ga. App. 250, 251-52, 363 S.E.2d 785, 787 (1987) (same). Trawick specifies in its complaint that its act of detrimental reliance upon UCIC's misrepresentation was that Trawick entered into the subcontract with Enviromediation. The undisputed evidence shows that this is quite impossible. Trawick entered into the subcontract with Enviromediation on January 15, 1999.

But UCIC did not issue the bond until April 1, 1999, and no one at Trawick even saw a copy of the bond until April 5, 1999, and such was Trawicks first interaction of any kind with UCIC. Thus, Trawick clearly did not enter into the contract with Enviromediation based on anything UCIC said or did. Based on the lack of evidence of an intent to deceive or reliance, summary judgment is warranted on Trawick's fraud claims against UCIC.

In brief, Trawick switches gears, alleging for the first time that UCIC's fraud actually occurred "after Enviromediation's performance of the [sub]contract began, when Trawick demanded that Enviromediation provide the required payment and performance bond." Plaintiff's Opposition at 22. It was "[w]hen Enviromediation finally provided the bond issued by [UCIC]," Trawick asserts, that "Enviromediation and [UCIC] made misrepresentations that were reckless, negligent, and intentional." Id. Such claims are not included in Trawick's complaint, and the Court need not entertain claims that are raised for the first time in a summary judgment brief. Caribbean Wholesales & Service Corp. v. U.S. JVC Corp., 963 F.Supp. 1342, 1359 (S.D. N.Y. 1997); MCI Telecommunications Corp. v. Ameri-Tel, Inc., 852 F.Supp. 659, 666 (N.D. Ill. 1994). Application of this rule would seem particularly apt here given that Fed. R. Civ. P 9(b) requires averments of fraud to be pleaded with particularity.[2] But even assuming that these claims are properly presented, they are due to be dismissed on summary judgment, as they amount to still more promissory fraud claims unsupported by evidence either of a

---

[2]The Court recognizes that Trawick's complaint was originally filed in state court and thus may have been drafted with an eye towards the Alabama Rules of Civil Procedure, rather than the federal rules applicable in this Court. Nonetheless, the Alabama Rules of Civil Procedure also require averments of fraud to be pleaded with particularity. See Ala. R. Civ. P. 9(b).

present intent to deceive on the part of Defendants or of reliance on the part of Trawick.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motion for summary judgment (Doc. 21) is due to be GRANTED IN PART AND DENIED IN PART.  It is due to be granted to the extent that it seeks dismissal of all of Trawick's fraud claims, as the Court concludes that there are no genuine issues of material fact and Defendants' are entitled to judgment as a matter of law on all such claims, regardless of whether such claims are brought under Alabama or Georgia law.  Defendants' motion is due to be denied, however, insofar as it seeks dismissal of Trawick's bad faith claim against UCIC.  Trawick's cross-motion for summary judgment on its bad faith claim against UCIC (Doc. 23) is likewise due to be DENIED.  A separate order will be entered.

IT IS SO ORDERED, this _17th_ day of May, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE